**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GLORIA THEOPHILOUS,
    *Plaintiff*,

    v.

BRIDGEPORT MENTAL HEALTH
CENTER,
    *Defendant.*

No. 3:18-cv-02151 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Gloria Theophilous ("Plaintiff") has sued the State of Connecticut Bridgeport Mental Health Center, a division of Department of Mental Health and Addiction Services ("Defendant" or "Bridgeport Mental Health Center"), alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) ("Title VII"), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(4). Am. Compl., ECF No. 25 (Oct. 4, 2019).

Ms. Theophilous alleges that Bridgeport Mental Health Center, "having discriminated against [her] in employment on the grounds of her race, national origin and accent, retaliated against her for complaining about it." Am. Compl. ¶ 1.

Bridgeport Mental Health Center has moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. to Dismiss, ECF No. 27 (Oct. 18, 2019) ("Def.'s Mot."); Mem. in Supp. of Def.'s Mot. to Dismiss at 1, ECF No. 27-1 (Oct. 18, 2019) ("Def.'s Mem.").

For the following reasons, Defendant's motion to dismiss is **GRANTED in part**, and **DENIED in part**. Plaintiff's CFEPA claim will be dismissed, but her Title VII claim is not time-barred, at least not at this time, and remains in the case.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations[1]

On or about April 2, 2008, Bridgeport Mental Health Center, a "division of the State of Connecticut, Department of Developmental Services,"[2] Am. Compl. ¶ 4, allegedly hired Ms. Theophilous "as a social worker at its New Haven, Connecticut facility," *Id*. ¶ 6. While stationed at the New Haven facility, Ms. Theophilous allegedly "suffered what she in good faith considered to be discrimination because of her race, national origin[,] and accent." *Id*. ¶ 6. She allegedly filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") regarding this discrimination. *Id*.

In November 2013, allegedly in retaliation for filing her complaint, Ms. Theophilous allegedly was transferred to the Bridgeport facility and "demoted to the position of Mental Health Worker with a cut in salary." *Id*. Shortly after Ms. Theophilous's transfer to Bridgeport, "retaliation against [her] began." *Id*. ¶ 7.

Such retaliation allegedly included Ms. Theophilous's supervisor, Evangeline Gubor, "refer[ring] to plaintiff as 'stupid,' 'useless,' 'incompetent,' and 'no good[,]' and advis[ing] the plaintiff that she was not happey [sic] having her assigned to her floor and that as far as she was concerned the plaintiff held a useless college degree and was dumb and stupid." *Id*. Ms. Gubor's

---

[1] All factual allegations are drawn from the Amended Complaint and from documents referenced by the Complaint. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (in considering a motion to dismiss under Rule 12(b)(6), a court limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").

[2] Ms. Theophilous alleges that Defendant is a "division of the State of Connecticut, Department of Mental Health and Retardation," but the Court takes judicial notice that in 2007, the Connecticut Department of Mental Retardation changed its name to the Department of Developmental Services. *State of Connecticut Department of Developmental Services History*, CONN. OFFICIAL STATE WEBSITE, https://portal.ct.gov/DDS/General/AboutUs/History (last visited July 23, 2020).

behavior allegedly "encouraged the plaintiff's co-workers to engage in comparable behavior." *Id.* ¶ 8. "These discriminatory acts were [allegedly] reported to higher levels within the agency but no relief was afforded to the plaintiff." *Id.* ¶ 7.

By May 2014, Ms. Theophilous allegedly had completed the six-month probationary period, "whereupon she was classified as a permanent employee" with Bridgeport Mental Health Center. *Id.* ¶ 6.

In May 2015, Ms. Theophilous allegedly was suspended for five days "for reading to a client without making eye contact." *Id.* ¶ 8.

On August 11, 2015, while Ms. Theophilous was entering patient notes into "the defendant's WIT program," a co-worker allegedly accused her of being "lazy." *Id.* ¶ 8. The charge nurse then allegedly ordered Ms. Theophilous, in front of staff and clients, to "get off the computer and take out the trash." *Id.* The charge nurse allegedly stated further that "I am the charge nurse and I have the right to talk to you the way I like. . . . Shut up, be quiet, or I am going to write you up." *Id.* Ms. Theophilous allegedly complained to her supervisor, Mr. Columbus, who allegedly "pointed his finger in [her] face and responded that [she] was the one with the problem and that everyone was complaining about her." *Id.*

In February 2016, Vicki Hoey, the Director of Nursing, allegedly "falsely accused [Ms. Theophilous] of stealing working hours" after she had "left work after becoming ill gone directly to a hospital" and allegedly had her investigated "for leaving her post without notifying the charging nurse." *Id.* ¶ 9. Although Ms. Theophilous's "time cards [allegedly] proved this accusation was false . . . . Ms. Hoey then publicly announced that [Ms. Theophilous] was under investigation for leaving her post without notifying the charge nurse." *Id.* Ms. Theophilous then allegedly sought "a transfer out of that unit, but [was] without success." *Id.*

In April 2016, allegedly "after many months of complaining that she was the only one in her unit not to have received an evaluation for 2015," Ms. Theophilous allegedly learned that Ms. Gubor had placed an evaluation "secretly in her personnel file without affording her an opportunity to review or challenge it[,]" and "without the required approval of Human Resources." *Id*. ¶ 10. Ms. Theophilous allegedly did fare well in the evaluation, which allegedly "included an allegation of 'poor judgment.'" *Id*. But Ms. Theophilous allegedly "had never been warned or notified that anyone consider[ed] her judgment poor." *Id*.

On May 16, 2016, Ms. Gubor allegedly loudly berated Ms. Theophilous for about thirty minutes "in front of a charge nurse, calling [Ms. Theophilous] 'useless' and stating: 'I don't know where you came from doing social work. You do not comprehend anything about this job. You are nothing.'" *Id*. ¶ 11.

On May 17, 2016, Ms. Theophilous allegedly "met with the Director, Karen Stillman and explained the pattern of retaliation to which she was being subjected." *Id*. ¶ 12. She allegedly "requested a transfer off the floor," but her request allegedly was denied. *Id*.

On June 14, 2016, allegedly in response to Ms. Theophilous's complaints of retaliation, Ms. Hoey allegedly "summoned the plaintiff to a meeting at which she rejected the plaintiff's complaints and ejected her from her office." *Id*. Ms. Theophilous and her union representative allegedly reported this alleged abuse to Human Resources, "but without avail." *Id*. ¶ 13.

On September 20, 2016, Ms. Theophilous filed a complaint against Bridgeport Mental Health Center with the CHRO. Mot. to Dismiss Ex. A, ECF No. 27-2 (Oct. 18, 2019) ("2016 CHRO Compl. & Right to Sue Letters").

On September 28, 2016, the February 2016 investigation into the allegations that Ms. Theophilous had improperly left work early "was reopened in violation of the prior practices of

4

the department." *Id*. ¶ 14. "At the conclusion of this second 'investigation,' [Ms. Theophilous allegedly] was suspended for five days and at the end of her suspension she was given a second poor evaluation." *Id*.

On November 18, 2016, another co-worker allegedly stated to Ms. Theophilous, "in the presence of others, 'you are unnecessary here.'" *Id*. ¶ 15. When Ms. Theophilous complained, she allegedly was ordered to sign an agreement to 'work in peace' with the co-worker." *Id*. The co-worker allegedly was later transferred to another unit after he allegedly "became involved in an altercation with a black male employee" in mid-January 2017. *Id*. ¶ 16.

On December 2, 2016, Ms. Theophilous allegedly "reported the ongoing retaliation to her superiors . . . but again nothing was done." *Id*. ¶ 15.

Ms. Theophilous alleges that "[t]he above-described pattern of hostility, disparate treatment and retaliation has continued up to the present day" and that she "is suffering economic losses and emotional distress" as a result. *Id*. ¶ 17.

### B. Procedural History

On September 20, 2016, Ms. Theophilous filed a complaint against the Connecticut Department of Mental Health and Addiction Services[3] with the CHRO alleging discrimination and retaliation on the basis of race, ancestry, national origin and prior opposition to discriminatory conduct, in violation of Title VII and the CFEPA. 2016 CHRO Compl. & Right to

---

[3] Ms. Theophilous alleges in her Amended Complaint that Bridgeport Mental Health Center is a division of the Department of Developmental Services ("DDS"), Am. Compl. ¶ 4; but filed her CHRO/EEOC complaints asserting that Bridgeport Mental Health Center is a division of the State of Connecticut Department of Mental Health and Addiction Services ("DMHAS"), 2016 CHRO Compl. & Right to Sue Letters at 3; Mot. to Dismiss Ex. B at 1–5, ECF No. 27-3 (Oct. 18, 2019) ("2017 CHRO Compl. & Right to Sue Letters"). Bridgeport Mental Health Center states in its motion to dismiss that it is a division of DMHAS, consistent with Ms. Theophilous's CHRO complaints, and does not make any argument that Ms. Theophilous filed her Amended Complaint against the wrong entity. The Court construes the parties' filings, therefore, as agreeing that Ms. Theophilous has filed her Amended Complaint against the proper entity, the same entity identified in her CHRO complaints.

Sue Letters. In her complaint, she details alleged acts of discrimination occurring between 2012, when she allegedly filed her first CHRO discrimination complaint, and June 2016. *Id.*

On June 9, 2017, Ms. Theophilous filed another complaint against the Connecticut Department of Mental Health and Addiction Services with the CHRO alleging discrimination and retaliation on the basis of race, ancestry, national origin, sex, mental disability/disorder, and prior opposition to discriminatory conduct, in violation of Title VII and the CFEPA; and alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Mot. to Dismiss Ex. B at 1–5, ECF No. 27-3 (Oct. 18, 2019) ("2017 CHRO Compl. & Right to Sue Letters"). In this complaint, she details alleged acts of discrimination occurring since she filed her 2016 CHRO Complaint. *Id.*

On October 4, 2018, Ms. Theophilous received right to sue letters from the CHRO in response to both her 2016 and 2017 CHRO complaints, informing her that she had 90 days to file a civil action in Connecticut Superior Court. 2016 CHRO Compl. & Right to Sue Letters at 6–7; 2017 CHRO Compl. & Right to Sue Letters at 6–7.

On December 28, 2018, Ms. Theophilous filed a Complaint against Bridgeport Mental Health Center with this Court asserting employment discrimination claims under Title VII and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*. ("ADEA"). Compl., ECF No. 1 (Dec. 28, 2018).

On June 25, 2019, Ms. Theophilous received right to sue letters from the EEOC in response to both her 2016 and 2017 CHRO complaints, informing her that she had 90 days to file a civil action in federal or state court. 2016 CHRO Compl. & Right to Sue Letters at 8; 2017 CHRO Compl. & Right to Sue Letters at 8.[4]

---

[4] The CHRO issued a Right to Sue letter to Ms. Theophilous on October 4, 2018, 2016 CHRO Compl. & Right to Sue Letters at 7; 2017 CHRO Compl. & Right to Sue Letters at 7; and Ms. Theophilous timely filed her complaint in

6

On July 3, 2019, Bridgeport Mental Health Center filed a Motion for More Definite Statement, requesting that Ms. Theophilous "provide the defendant with a more definite statement of the claims being asserted in the Complaint so that the defendant can reasonably prepare a response." Mot. for a More Definite Statement at 1, ECF No. 18 (July 3, 2019).

On October 4, 2019, Ms. Theophilous filed an Amended Complaint against Bridgeport Mental Health Center. Am. Compl.

On October 18, 2019, Bridgeport Mental Health Center filed a Motion to Dismiss Ms. Theophilous's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Def.'s Mot; Def.'s Mem.; 2016 CHRO Compl. & Right to Sue Letters; 2017 CHRO Compl. & Right to Sue Letters.

On November 4, 2019, Ms. Theophilous filed a Brief in Opposition to Bridgeport Mental Health Center's Motion to Dismiss. Br. in Opp'n to Mot. to Dismiss, ECF No. 29 (Nov. 4, 2019) ("Pl.'s Opp'n.").

On November 18, 2019, Bridgeport Mental Health Center filed a Reply to Response to the Motion to Dismiss filed by Bridgeport Mental Health Center. Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 30 (Nov. 18, 2019) ("Def.'s Reply").

---

federal court on December 28, 2018. *See* Compl. Ms. Theophilous did not receive her EEOC Right to Sue letters until 2019. 2016 CHRO Compl. & Right to Sue Letters at 8; 2017 CHRO Compl. & Right to Sue Letters at 8. In the Second Circuit, however, a "plaintiff who commences a Title VII action before receiving a right-to-sue letter may nonetheless maintain an action upon subsequent receipt of the letter." *Rajaravivarma v. Bd. of Trs. for the Conn. State Univ. Sys.,* 862 F. Supp. 2d 127, 145 (D. Conn. 2012) (quoting *Civil Serv. Emps. Ass'n, Inc., Local 1000 v. N.Y. Dep't of Parks, Recreation & Historic Pres.*, 689 F. Supp. 2d 267, 276 (N.D.N.Y. 2010); *see also Brunson-Bedi v. New York*, No. 15-civ-9790 (NSR), 2018 WL 2084171, at *4 (S.D.N.Y. May 1, 2018) ("[C]ourts in this circuit have already held that where a plaintiff has received a 'right to sue letter subsequent to commencement of a Title VII action' and while the federal action is still pending, the statutory exhaustion requirements have been met 'based on . . . equitable principles.") (quoting *Benzo v. N.Y. Div. of Human Rights*, No. 95-civ-5362 (LAP), 1997 WL 37961, at *9 (S.D.N.Y. Jan. 31, 1997)); *Evancho v. Key Lincoln Mercury, Inc.*, No. 3:03-cv-1128 (EBB), 2005 WL 8167265, at *5 (D. Conn. Apr. 26, 2005) ("It matters not that Plaintiff's state court action, removed to federal court by Defendant, was filed prematurely under the EEOC mandates. 'Although [Plaintiff] did not receive a right to sue letter before filing [his] complaint in state court, [his] subsequent receipt of the requisite letter during the pendency of this case has cured any defect caused by the premature filing of [his] claim." (quoting *Gadbois v. Rock-Tenn Co., Mill Div., Inc*., 984 F. Supp. 811, 817 (D. Vt. 1997)).

On July 29, 2020, the Court held a hearing on Defendant's motion to dismiss. Minute Entry, ECF No. 34 (July 29, 2020).

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

### A. 12(b)(1) Motion

Federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). In order for a court to exercise subject matter jurisdiction, either (1) the plaintiff must set forth a colorable claim arising under the U.S. Constitution or a federal statute, thus invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331;

or (2) there must be complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy must exceed $75,000 under 28 U.S.C. § 1332. *See DaSilva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (identifying and discussing the two categories of subject matter jurisdiction).

The burden of persuasion for establishing diversity jurisdiction rests on the party asserting it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *see also Herrick Co. Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (the party asserting diversity jurisdiction "bears the burden of demonstrating that the grounds for diversity exists and that diversity is complete"). The party invoking the court's jurisdiction must support allegations of complete diversity with "competent proof." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

### B. 12(b)(6) Motion

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy*

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.   DISCUSSION

Ms. Theophilous asserts claims of discrimination on the grounds of race, national origin, and accent, and retaliation for complaining of such discrimination, under the CFEPA and Title VII of the Civil Rights Act of 1964. Am. Compl. at 1 ¶ 1, 7 ¶ 1.

#### A.   The Connecticut Fair Employment Practices Act (CFEPA) Claim

Ms. Theophilous originally alleged that Bridgeport Mental Health Center discriminated against her on the basis of her race, national origin, and accent, and retaliated against her for complaining about such discrimination, in violation of the CFEPA. *Id.* at 7 ¶ 1.

Bridgeport Mental Health Center argues that the Eleventh Amendment bars Ms. Theophilous's claims under §§ 46a-60(a)(1) or 46a-58(a), which govern causes of action under CFEPA, because the State did not make any clear declaration of its intention to submit to federal jurisdiction for alleged violations of CFEPA.

In her reply, Ms. Theophilous agrees that Bridgeport Mental Health Center "has not waived its Eleventh Amendment immunity with respect to the state law claim of a violation of the Connecticut Fair Employment Practices Act.

The Court therefore need not address Ms. Theophilous's claims under CFEPA, but nonetheless agrees with the parties that the Eleventh Amendment bars these claims.[5]

---

[5] Defendant moved to dismiss Plaintiff's CFEPA claim for lack of subject matter jurisdiction over that claim alone. Def.'s Mem. at 1. The Court may not dismiss a single claim for lack of federal question jurisdiction, however, as the

10

In this District, claims against a state or its agencies under CFEPA may not be brought in federal court because of Eleventh Amendment immunity. *See Moore v. Dep't of Corr.*, No. 3:13-cv-01160 (JAM), 2017 WL 2413690, at *8 (D. Conn. June 2, 2017) ("[This court] will grant defendant's motion for summary judgment on plaintiff's CFEPA claim . . . because the Eleventh Amendment plainly bars relief against [defendant] as an entity of the State of Connecticut and because neither the State nor Congress has waived Eleventh Amendment immunity against CFEPA claims in federal court." (citation omitted)); *Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 577–78 (D. Conn. 2016) (collecting cases). Rather, the State of Connecticut has waived its immunity only to CFEPA claims brought in Connecticut state court, and that waiver does not extend to federal courts. *See, e.g.*, *Brown v. Conn. Dep't of Children & Families*, No. 3:08-cv-1478 (MRK), 2010 WL 2220580 at *14–15 (D. Conn. May 27, 2010) (aggregating cases); *Lyon v. Jones*, 168 F. Supp. 2d 1, 6 (D. Conn. 2001) ("The state has clearly waived immunity to claims brought under CFEPA as to cases brought in the Connecticut state courts. However, this court has found that there is nothing in the Connecticut General Statutes that constitutes an express waiver of Eleventh Amendment immunity for CFEPA claims."); *Walker v. Connecticut,* 106 F. Supp. 2d 364, 369 (D. Conn. 2000) ("The only way Plaintiff may bring a CFEPA claim in federal court against the State is by the consent of the State to be sued in

---

statute creating federal question jurisdiction governs federal courts' jurisdiction over an entire case, not over individual claims. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998) ("An ordinary reading of the language [of 42 U.S.C. § 1441(c)] indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case."). In *Pennhurst State School and Hospital v. Halderman*, which Defendant cites to support its jurisdictional argument, the United States Supreme Court held that Courts must dismiss state law claims barred by the Eleventh Amendment, but it did not hold that dismissal of a claim based on sovereign immunity is equivalent to dismissal of a claim for lack of subject matter jurisdiction. *See* 465 U.S. 89 (1984); *see also Schacht,* 524 U.S. at 391–92 ("Even making the assumption that Eleventh Amendment immunity is a matter of subject-matter jurisdiction—a question we have not decided . . . . [a] State's proper assertion of an Eleventh Amendment bar after removal means that the federal court cannot hear the barred claim. But that circumstance does not destroy removal jurisdiction over the remaining claims in the case[.]").

11

that forum. The State has waived its immunity, but only as to cases brought in the Superior Court.").

Accordingly, because the Court Ms. Theophilous's CFEPA claims are barred by sovereign immunity under the Eleventh Amendment, Bridgeport Mental Health Center's motion is granted with respect to those claims and Ms. Theophilous's state law claims will be dismissed.

### B. The Title VII Claim

A plaintiff bringing a Title VII claim in federal court must first exhaust their administrative remedies by presenting the claims to the EEOC. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[E]xhaustion of administrative remedies through the EEOC stands as 'an essential element of Title VII's statutory scheme[.]'" (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)); *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) ("A Title VII claimant may file suit in federal court only if she has filed a timely complaint with EEOC and obtained a right-to-sue letter." (citing 42 U.S.C. §§ 2000e-5(e)). "An employee . . . may bring a Title VII claim only if she has first filed a timely charge with the EEOC" and "must obtain a right-to-sue letter before bringing suit—and a court will typically insist on satisfaction of that condition." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 487 (2015) (internal citations omitted).

Under section 2000e-5(e)(1) of Title VII, a complaint shall be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (The word "'shall' makes the act of filing a charge within the specific time period mandatory.").[6] The

---

[6] "In a State having an entity authorized to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Morgan*, 536 U.S. at 102 (citing § 2000e–5(e)(1)).

12

Second Circuit has stated that "'strict adherence to Title VII's timely filing requirements is the best guarantee of evenhanded administration of the law.'" *Id*. at 101 (quoting *Mohasco Corp v. Silver*, 447 U.S. 807, 826 (1980)).

"'Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar,' such as lack of timeliness, 'as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.").

Ms. Theophilous alleges that Bridgeport Mental Health Center, "having discriminated against [her] in employment on the grounds of her race, national origin, and accent, retaliated against her for complaining about it," in violation of Title VII. Am. Compl. ¶ 1.

Bridgeport Mental Health Center argues that Ms. Theophilous's Title VII claims based on events occurring before November 25, 2015, must be dismissed because they are time-barred. Def.'s Mem. at 8. In their view, because "section 2000e-5(e) of Title VII requires that a charge of discrimination be filed with the Equal Employment Opportunity Commission (EEOC) within 180 or 300 days," any claims of discriminatory conduct that occurred before November 25, 2015—the date 300 days before she filed her September 20, 2016 CHRO complaint—are time-barred. *Id*. at 9.

In response, Ms. Theophilous argues that "[m]ost of the specific instances delineated in the Amended Complaint . . . took place well after that [November 25, 2015] date and, indeed, the Amended Complaint alleges ongoing discriminatory and retaliatory conduct continuing to the present moment." Pl.'s Opp'n at 1.

Bridgeport Mental Health Center argues that Ms. Theophilous's "untimely alleged discrete allegations, including, but not limited to, a transfer and demotion in November 2013, and a five day suspension in May 2015" are time-barred and cannot be saved by the continuing violation doctrine. Def.'s Reply at 1, 2 (citing *Morgan*, 536 U.S. 101; *Birch v. City of New York*, 675 F. App'x 43 (2d Cir. 2017)).

The Court disagrees, at this stage.

The continuing violation exception provides that, "if a Title VII plaintiff files an [Equal Employment Opportunity Commission] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth.*, 685 F.3d 135, 155–56 (2d Cir. 2012). Under this doctrine, a Title VII claim is not "time-barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period." *Morgan*, 536 U.S. at 101; *see also id*. at 120 (affirming the plaintiff's hostile environment claim, where the "the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" (citation omitted)). By contrast, "the continuing violation doctrine [does] not" apply "to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[],' but" rather applies "to claims that by their nature accrue only after the plaintiff has been

subjected to some threshold amount of mistreatment." *Gonzales v. Hasty*, 802 F. 3d 212, 220 (2d Cir. 2015).

The statute of limitations defense, however, "is an affirmative defense, and therefore generally not appropriate for a motion to dismiss." *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-cv-282 (JCH), 2012 WL 162361, at *3 (D. Conn. Jan. 19, 2012). Because "[a] statute of limitations analysis is generally riddled with questions of fact which the Defendants must establish in order to bar Plaintiffs' claims," *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010); a defendant may only raise such a defense in a pre-answer motion to dismiss "where the dates in a complaint clearly show that an action is barred by a statute of limitations." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (citing *Ghartey*, 869 F.2d at 162); *see also OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007) ("A statute of limitations defense . . . requires a factual inquiry beyond the face of the complaint.").

Ms. Theophilous has alleged a "pattern of hostility, disparate treatment and retaliation" which "has continued up to the present day." Am. Compl. ¶ 17. Whether the alleged events constitute a continuing pattern of hostility triggering the continuing violation doctrine or, instead, are discrete events is a question better addressed on a summary judgment motion after discovery. *See Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir. 2009) (holding that the district court erred in granting a motion to dismiss on statute of limitations for breach of contract claim because factual development was needed to determine "what the alleged promise meant," and whether it was a "continuing obligation" such that "each successive breach may begin the statute of limitations running anew"); *Bartold*, 2015 WL 7458504, at *4–*5 (denying motion to dismiss CUTPA

claims as time barred, finding that factual development was needed to determine whether there is evidence that later wrongful acts are sufficiently related to the earlier acts to trigger the continuing violations doctrine); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 210 (S.D.N.Y. 2014) (denying motion to dismiss conversion claim as time-barred because factual development was needed as to when the alleged conversion actually took place); *Allen v. Egan*, 303 F. Supp. 2d 71, 74, 79 (D. Conn. 2004) (denying motion to dismiss equal protection claims against supervisors who allegedly "engaged in a pattern or practice of discriminating against employees on the basis of age" as time barred because "[d]etermining whether the events comprising the basis for [plaintiff]'s claim are part of a single, continuing course of conduct is fact-intensive, and therefore inappropriate at this stage of the proceedings").

Accordingly, Bridgeport Mental Health Center's motion to dismiss, in part, Ms. Theophilous's claim as time-barred, will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED in part**, and **DENIED in part**.

Plaintiff's CFEPA claim will be dismissed, but her Title VII claim is not time-barred, at least not at this time, and remains in the case.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of August, 2020.

/s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE